# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEVI S. BALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-348-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Levi S. Ball requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 6, 1983, and was thirty years old at the time of the administrative hearing (Tr. 39). He completed the twelfth grade and has worked as a shuttle car operator (Tr. 31). The claimant alleges inability to work since September 12, 2009, because of a gunshot wound to his pelvic area, mental problems, panic attacks, anxiety, anger problems, depression, bi-polar disorder, and problems related to bowel functions (Tr. 233).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 1, 2012. His applications were denied. Following an administrative hearing, ALJ Bernard Porter found that the claimant was not disabled in a written opinion dated January 29, 2014 (Tr. 16-33). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform less than the full range of light work, *i. e.*, that

he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; frequently handle, finger, and feel; and stand/walk/sit six hours in an eight-hour workday, but with a sit/stand option to allow for a change in position at least every thirty minutes; and only occasional use of foot controls (Tr. 21). He imposed the following additional limitations: (i) occasionally climbing ramps and stairs but never climbing ladders or scaffolds; (ii) frequently balance, stoop, and crouch; (iii) occasionally kneel; (iv) never crawl; (v) avoiding working at unprotected heights, around moving mechanical parts, and environments with temperature extremes; (vi) performing simple tasks and simple work-related decisions with no more than occasional interaction with supervisors and coworkers; (vii) no interaction with the general public; and (viii) being off-task 5% of the workday and missing up to one day of work each month due to episodic symptomatology (Tr. 21). The ALJ concluded that even though the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, electrical accessory assembler or small product assembler (both with 50% reduction in jobs availability to account for the sit/stand option), and conveyor line bakery worker (Tr. 32).

## Review

The claimant contends that the ALJ erred: (i) by failing to find he had additional severe impairments, (ii) by failing to properly evaluate his RFC, and (iii) by failing to make proper step five findings. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant's gunshot wound to the pelvis, major depression, history of alcohol abuse, personality disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and schizoaffective disorder were severe impairments, and that his bowel and bladder difficulties were nonsevere (Tr. 18-19). Medical records reveal that the claimant sustained an accidental gunshot wound to the pelvis on September 12, 2009. He was hospitalized and underwent a repair of a common femoral vein using interposition vein graft, left femoral artery embolectomy with vein patch repair of femoral artery, ligation of perfunda femoral artery, and debridement (Tr. 330). He was released on September 23, 2009 (Tr. 330). A January 20, 2009 CT of the lumbar spine revealed right paracentral disc bulge or possible protrusion at the L4-5 level, and centra broad-based annular slight bulge at the L5-S1 level (Tr. 426). An October 1, 2013 CT of the abdomen and pelvis revealed metallic shrapnel in the soft tissues overlying the left hemipelvis and proximal left femur (Tr. 499-500).

On December 8, 2012, Dr. Traci Carney, D.O., conducted a physical examination of the claimant (Tr. 450). The claimant had a range of motion within normal limits, grip strength 5/5, and could perform gross and fine tactile manipulation as well as adequate finger to thumb opposition (Tr. 452). His gait was safe and stable, he had no identifiable muscle atrophy, and his heel/toe walking was normal (Tr. 452). She assessed him with history of gunshot wound in 2009, possible urinary incontinence, possible bowel incontinence, history of depression, history of bipolar disease, history of anger management issues, anxiety, and panic attacks (Tr. 452).

The claimant's treating physician, Dr. Thomas H. Conklin, submitted treating notes that were largely illegible but reflected concerns related to the claimant's mental health ("? Bipolar") on January 16, 2013 (Tr. 483). He later submitted a physical medical source statement indicating that the claimant could sit and stand two hours in an eight-hour workday and walk one hour in an eight-hour workday, needed rest breaks at hourly intervals or less, and needed to alternate between sitting and standing at 15 minute intervals or less (Tr. 501). He further indicated that the claimant could frequently lift up to five pounds and up to ten pounds occasionally, and only occasionally carry up to ten pounds (Tr. 501-502). He indicated that the claimant's lower extremities were limited due to the past gunshot wound, that he could only occasionally push/pull and reach, but not work in extended position, above the shoulder level, or overhead, and that he could only occasionally finger and grasp (Tr. 502). He also indicated that the claimant was severely limited in relation to postural limitations (Tr. 502-503), and that all of the claimant's limitations had existed since September 12, 2009 (Tr. 503).

As to the claimant's mental impairments, the claimant was hospitalized for suicidal thoughts in 2007 (Tr. 327). He underwent a mental status examination with Diane Brandmiller, Ph.D., on December 15, 2009 (Tr. 398). She noted his reports of depression and two previous hospitalizations (once in 2005 for six months and once in 2007), but indicated that his short term memory, concentration, and abstract thinking appeared intact, as well as his expressive and receptive language skills, and that he appeared able to understand and carry out simple instructions (Tr. 402). Her diagnostic

impression was major depressive disorder, recurrent, moderate, as well as alcohol abuse. She assessed him with a global assessment of functioning (GAF) range of 54-63 (Tr. 402).

A state reviewing physician found the claimant had a mild degree of limitation as to his restriction of activities of daily living, and moderate restrictions in difficulties in maintaining social functioning and maintaining concentration, persistence, and pace, with no episodes of decompensation (Tr. 283). Furthermore, a state reviewing physician found the claimant was physically capable of performing light work, with only occasional stooping, kneeling, crouching, and crawling (Tr. 292-293).

Dr. Theresa Horton, Ph.D., conducted a mental status evaluation of the claimant on December 17, 2012 (Tr. 458). She noted that he appeared casually dressed and appropriately groomed, and appeared calm despite complaints of panic attacks when he is around anyone (Tr. 460). He was logical, organized, and goal directed; mentioned a history of suicidal ideation and demonstrated dysthymic/negative thinking about the world around him; he appeared depressed; he was oriented x3; his recall and memory were intact and concentration was adequate; he had a slow pace; and he had inappropriate judgment and poor insight (Tr. 460). She assessed him with dysthymia, early onset; anxiety disorder, NOS; and personality disorder, NOS, with prominent narcissistic and dependent traits (Tr. 461). Her prognosis was that he appeared capable of understanding, remembering and managing most simple and complex instructions and tasks, but would have difficulty with social/emotional adjustment into occupational and social settings,

and was resistant to change. She therefore recommended counseling with someone experienced in working in populations resistant to change (Tr. 461).

Following a referral from his treating physician, the claimant began treatment with Dr. Parind Shah, M.D. for his complaints of depression and anxiety. Dr. Shah diagnosed the claimant with schizo-affective schizophrenia, unspecified C, and prescribed medications (Tr. 464-466). An intake assessment form for mental health treatment reflects that on November 18, 2013, the claimant was assessed with major depressive disorder, recurrent moderate; PTSD; and chronic pain. He was prescribed medication, and assessed a GAF of 48 (Tr. 504-506).

The claimant first contends that the ALJ erred by failing to classify his bulging discs, degenerative disc disease, or neropathy as severe impairments at step two. Assuming *arguendo* that this *was* error by the ALJ, such error was nevertheless harmless because the ALJ *did find* the claimant's gunshot wound to the pelvis, major depression, history of alcohol abuse, personality disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and schizoaffective disorder to be severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See, e. g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the

effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. There is no suggestion here that the ALJ failed to consider all of the claimant's impairments at step four, so any error by the ALJ at step two was harmless.

The claimant further contends, however, that the ALJ committed error at step four by: (i) rejecting Dr. Conklin's medical source statement, (ii) failing to assign Dr. Horton's opinion significant weight, (iii) failing to properly assess the evidence, and (iv) improperly rejecting the claimant's credibility as it related to his testimony regarding his limited activities. But as discussed below, the ALJ provided a detailed discussion of the relevant evidence in the record, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The ALJ found Dr. Conklin's opinion was deficient and without supportive medical documentation, that his treatment notes did not contain objective evidence of such severe limitations, and that his assessment was inconsistent with the consultative examination findings of normal hand function, full range of motion in upper and lower extremities, no gait disturbance, and no sensory, motor, or neuroligic deficits (Tr. 30).

An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. Conklin's opinion meets these standards. Although his characterization of some of the evidence is questionable, *i. e.* an assertion related to the claimant's relationship with his infant child, the ALJ nevertheless made clear that he did not base his ultimate conclusion on this basis. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Conklin's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

As to Dr. Horton's opinion, he assigned it "little weight," finding that her opinion as to the claimant's difficulty with social/emotional adjustment was overly speculative, but restricting the claimant to simple instructions and tasks, rather than the simple *and complex* instructions and tasks as prescribed by Dr. Horton (Tr. 30). He then gave Dr. Brandmiller's opinion great weight when she limited him to simple instructions, as that appeared well-supported in the record (Tr. 30). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing*

*Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Here, the ALJ provided a detailed discussion of the relevant evidence in the record, explaining why he rejected some portions of Dr. Horton's opinion while further limiting the claimant beyond Dr. Horton's suggestion as to instructions and tasks. *Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d at 949.

The claimant next argues that the ALJ erred by failing to properly assess his credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that his "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] not credible for the reasons set forth herein" (Tr. 24). He then elaborated by discussing the medical evidence on which he relied to find that the claimant was not credible: (i) he underwent successful surgical intervention for his gunshot wound, and follow-up Venous Doppler showed no deep venous thrombosis; (ii) CT scans of the relevant areas have been unremarkable; (iii) he has undergone largely conservative treatment for back and leg pain; (iv) his mental health treatment has been sporadic; (v) despite claims that pain medications only eased his pain, he never reported it was not effective to his physicians; (vi) no physician noted he needed to lay down all day; (vii) his self-reports of what he can lift did not match the consultative examiners' findings; and (viii) the consultative examiner found full range of motion (Tr. 27-28). As to the Third Party Function Reports, the ALJ gave them partial credibility because: (i) despite the claimant's statements of a short attention span, he drove 45 miles to an examination and plays video games for hours, and (ii) he claimed to have panic attacks around anyone but presented calmly for examination, socialized with friends, and had a girlfriend (Tr. 28). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. His credibility determination was therefore not clearly erroneous.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court

simply cannot do. The ALJ specifically noted every medical and non-medical record available in this case, *and still concluded* that he could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.

The claimant's final contention is that he cannot perform the jobs identified by the ALJ because he cannot perform light work. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's fourth contention is therefore without merit.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**